UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ORANE NEITH,<br><br>Plaintiff,<br><br>v.<br><br>ESQUARED HOSPITALITY LLC, BC COMMISSARY NJ LLC, DEBRA MULHOLLAND, ABC CORPORATIONS 1-20 (FICTITIOUS NAMES), JANE DOES 1-20 (FICTITIOUS NAMES), JOHN DOES 1-20 (FICTITIOUS NAMES),<br><br>Defendants. | Civ. No. 19-13545 (KM) (JBC)<br><br>OPINION |

## KEVIN MCNULTY, U.S.D.J.:

Pending before the Court is a motion (DE 5) to dismiss the complaint and enforce the parties' agreement to arbitrate, filed by defendants ESquared Hospitality, LLC ("ESquared"), BC Commissary NJ, LLC ("BC"), and Debra Mulholland. Defendants also move for an award of attorney's fees. (*Id.*). For the reasons explained herein, the defendants' motion to dismiss is granted and the matter is referred to arbitration. Defendants' motion for fees is denied.

### I. Summary[1]
#### a. Factual Background

Defendants make and distribute vegan products. Mr. Neith was employed by defendants for several years, eventually holding the title of production manager at defendants' New Jersey facility. (Compl. ¶ 5).

---

[1] Citations to the record will be abbreviated as follows. Citations to page numbers refer to the page numbers assigned through the Electronic Court Filing system, unless otherwise indicated:

1

On October 11, 2018, Mr. Neith was operating a "Formatic cookie molding machine" when he seriously injured his hand. (*Id.* ¶ 1). As a result of his injury, Mr. Neith requested and received leave under the Family Medical Leave Act ("FMLA") (*id.* ¶ 23) and went on temporary disability. (*Id.* ¶ 6). During this time Mr. Neith also collected workers' compensation benefits. (*Id.*).

However, on October 22, 2018, 11 days after his injury, Mr. Neith's employment was terminated. (*Id.*). Mr. Neith asserts that he was fired in retaliation for his having applied for workers' compensation, filed suit in "the workers' compensation courts" against defendants (*id.* ¶ 10–11), and made a request for FMLA leave (*id.* ¶ 23).

### b. Procedural History

On December 14, 2018, Mr. Neith filed a complaint in the Superior Court of New Jersey, Law Division, Essex County. The complaint essentially asserts four claims:

- **Count I**: Retaliation in violation of New Jersey Workers' Compensation Act ("NJWCA"), N.J. Stat. Ann. § 34:15-39.1;
- **Counts II**: Wrongful termination and discrimination based on disability under the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5-1, *et seq.*;
- **Count III**: Retaliation in violation of the FMLA, 29 U.S.C. § 2615(a); and
- **Count IV**: Aiding and abetting wrongful termination and discrimination based on disability under the NJLAD.

Counts V and VI assert similar claims against fictitious defendants, which have not been identified, so I do not discuss them.

On May 8, 2019, defendant BC was served with a copy of the summons and complaint. (DE 1 at 5). On June 7, 2019, counsel for ESquared Hospitality and Debra Mulholland accepted service. (*Id.*). The same day, they filed a timely notice of removal to federal court. (*Id.*).

---

"DE" = Docket entry number in this case.
"Compl." = The Complaint filed by Mr. Neith. [DE 1].

2

On June 26, 2019, defendants moved to dismiss the complaint in favor of arbitration. (DE 5) Mr. Neith filed papers in opposition to that motion. (DE 6). Defendants filed a reply. (DE 9)

### c. The arbitration provision

Defendants assert that Mr. Neith signed an enforceable arbitration agreement. Attached to their papers is a copy of the 2017 arbitration agreement that they say Mr. Neith electronically signed. (DE 5-2 at 4–7; DE 9-2 at 4–7). Ms. Mulholland submits a certification as a former "Talent Strategy Manager" for ESquared. In it, she states that in January 2017 defendants began using an online platform called "Harri" that allows employees to review and electronically sign employment documents. (DE 9-2 (Declaration of Debra Mulholland) at 1).

Electronic records, she says, demonstrate that on May 1, 2017 at 5:26 pm GMT, Mr. Neith, through Harri, electronically signed an "Agreement to Resolve Disputes by Arbitration." (*Id.* at 2–3). She attached to her certification an additional document that provides the "IP address"[2] for the device used by Mr. Neith to electronically sign the agreement and provides the date and time that Mr. Neith signed the agreement. (*Id.* at 7).

The other party to the arbitration agreement is "The Restaurant," defined to "include[] any affiliates and their current and former employees and agents." (DE 5-2 at 4). The Restaurant is not otherwise defined in the agreement. At the top of page 1 of the agreement, however, appears a logo showing a large "E²", *i.e.*, E Squared, with a fork interwoven with the "2." Defendants assert that this is ESquared's letterhead (DE 9 at 7).

The relevant portions of the arbitration agreement read as follows:

> The Restaurant tries to work with employees to resolve differences promptly when they arise. Employees should first try to resolve their disputes informally by speaking with their supervisor. If you do not feel comfortable approaching your supervisor, the Restaurant

---

[2] An IP address or "internet protocol address" is a unique numerical identifier that attaches to any electronic device that uses the internet protocol.

3

encourages you to seek assistance from Human Resources staff or other members of the Restaurant's management team. If these informal efforts aren't successful, you agree to refer employment related disputes to the arbitration process described below.

1. **Overview**. You and the Restaurant agree that (except for "Excluded Claims" which are described below), all disputes, claims or controversies ("claims") against the Restaurant that could be brought in a court will be resolved through arbitration. This Agreement applies to all federal, state and local laws, regulations, common law claims and claims for costs, attorneys' fees and expenses, and is governed by the Federal Arbitration Act to the maximum extent permitted by law.

"Excluded Claims" include claims for workers' or unemployment compensation benefits, claims under any of the Restaurant's equity plans or other pension or welfare benefit plans containing its own procedure for resolving plan disputes, and all other claims that legally are not subject to mandatory binding pre-dispute arbitration under the Federal Arbitration Act. This agreement does not prohibit you from filing complaints with agencies such as the National Labor Relations Board or the Equal Opportunity Commission.

You agree to pursue all claims on an individual basis only. You waive your right to commence or be a part of any class or collective claims, or to bring a claim with another person. The arbitrator. has no power to consolidate claims or adjudicate a class or collective action.

. . .

4. **Specific Arbitration Provisions**. A single arbitrator in accordance with the Employment Rules and Procedures of National Arbitration and Mediation ("NAM") will hear the dispute. . . .

The arbitrator shall apply the Federal Rules of Civil Procedure (except for Rule 23) and the Federal Rules of Evidence as interpreted in the jurisdiction where the arbitration is held. . . .

The arbitration will take place in the county in which the employee was employed. The Restaurant will pay for the arbitration costs and fees imposed, except that You will be responsible for the costs equal to the cost of filing a Complaint in federal court.

5. **Other matters**. "The Restaurant" includes any affiliates and their current and former employees and agents. "You" or "your" includes you, as well as your heirs, administrators or executors. Nothing in this Agreement is intended to create a contract of employment for a

specific duration. This Agreement will be governed by and interpreted in accordance with the laws of the state in which you are employed by the Restaurant. Nothing precludes you from challenging the enforceability of this Agreement; however, the Restaurant will assert that you have agreed to pursue all claims individually in arbitration. The consideration for entering into this Agreement includes its mutuality, and your continued employment and/or your accepting employment with the Restaurant. You agree that this consideration is sufficient to support the Agreement.

**I KNOWINGLY AND FREELY AGREE TO THIS MUTUAL AGREEMENT TO ARBITRATE CLAIMS WHICH OTHERWISE COULD HAVE BEEN BROUGHT IN COURT. I AFFIRM THAT I HAVE HAD SUFFICIENT TIME TO READ AND UNDERSTAND THIS AGREEMENT AND THAT I HAVE BEEN ADVISED OF MY RIGHT TO SEEK LEGAL COUNSEL REGARDING THE MEANING AND EFFECT OF THIS AGREEMENT PRIOR TO SIGNING. THE RESTAURANT AGREES TO BE BOUND TO ITS TERMS WITHOUT ANY REQUIREMENT TO SIGN THIS AGREEMENT.**

## II. Discussion

### a. Legal standards

This Circuit's case law has meandered somewhat in defining the proper standard of review of a motion to compel arbitration. The upshot, however, is fairly clear. Where the issue can be decided without evidence, it will be, based on an application of the familiar Rule 12(b)(6) standard to the face of the pleadings. Failing that, however, the Court will permit discovery and decide the issue on a summary judgment standard, pursuant to Rule 56. If there is a genuine issue of fact, summary judgment will be denied and the issues will be tried.

Because arbitration is a "matter of contract" between two parties, "a judicial mandate to arbitrate must be predicated upon the parties' consent." *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 771 (3d Cir. 2013) (quoting *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 (3d Cir. 1980)). Pursuant to the Federal Arbitration Act ("FAA"), a court may enforce a contract to arbitrate, but only if the court is satisfied that the "making of the agreement" to arbitrate is not "in issue." *Id.*

In *Guidotti v. Legal Helpers Debt Resolution*, the Third Circuit stated the approach a court must take on a motion to compel arbitration. The judiciary must balance the competing goals of the FAA: the speedy and efficient resolution of disputes, and the enforcement of private agreements. *Id.* at 773. Reconciling sometimes murky precedent in light of those competing interests, the *Guidotti* court reasoned that where "the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or ... documents relied upon in the complaint), . . . the FAA would favor resolving a motion to compel arbitration under a motion to dismiss standard without the inherent delay of discovery." *Id.* at 773-74. Such an approach "appropriately fosters the FAA's interest in speedy dispute resolution. In those circumstances, '[t]he question to be answered . . . becomes whether the assertions of the complaint, given the required broad sweep, would permit adduction of proofs that would provide a recognized legal basis' for rejecting the affirmative defense." *Id.* at 774 (quoting *Leone v. Aetna Cas. & Sur. Co.*, 599 F.2d 566, 567 (3d Cir. 1979).

"In many cases, however, a more deliberate pace is required, in light of both the FAA's insistence that private agreements be honored and the judicial responsibility to interpret the parties' agreement, if any, to arbitrate." *Id.*

> [The Rule 12(b)(6) standard will not be appropriate] when either the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity to establish on its face that the parties agreed to arbitrate or the opposing party has come forth with reliable evidence that is more than a naked assertion . . . that it did not intend to be bound by the arbitration agreement, even though on the face of the pleadings it appears that it did. Under the first scenario, arbitrability not being apparent on the face of the complaint, the motion to compel arbitration must be denied pending further development of the factual record. The second scenario will come into play when the complaint and incorporated documents facially establish arbitrability but the non-movant has come forward with enough evidence in response to the motion to compel arbitration to place the question in issue. At that point, the Rule 12(b)(6) standard is no longer appropriate, and the issue should be judged under the Rule 56 standard.
>
> Under either of those scenarios, a restricted inquiry into factual issues will be necessary to properly evaluate whether there was a

meeting of the minds on the agreement to arbitrate and the non-movant must be given the opportunity to conduct limited discovery on the narrow issue concerning the validity of the arbitration agreement. In such circumstances, Rule 56 furnishes the correct standard for ensuring that arbitration is awarded only if there is an express, unequivocal agreement to that effect.

*Id.* (internal citations and quotations and external citation omitted).

Thus, where the complaint and supporting documents are unclear as to an agreement to arbitrate or where a plaintiff responds to a motion to compel with additional facts sufficient to place the issue of arbitrability "in issue," then the parties should be entitled to discovery. After limited discovery, a court may then "entertain a renewed motion to compel arbitration" and should review such a motion under the summary judgment standard.

If summary judgment is unwarranted in light of material factual disputes regarding an agreement's enforceability, a court should then proceed to trial "regarding 'the making of the arbitration agreement or the failure, neglect, or refusal to perform the same,' as Section 4 of the FAA envisions." *Id.* (quoting *Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011)). In every instance, "[b]efore a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect." *Id.* (quoting *Par–Knit Mills*, 636 F.2d at 54).

Federal law is decidedly pro-arbitration. The FAA's purpose is "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). Thus, the statute makes agreements to arbitrate "valid, irrevocable, and enforceable," 9 U.S.C. § 2, subject only to traditional principles of contract formation and interpretation. The FAA provides that contract provisions manifesting the intent of the parties to settle disputes in arbitration shall be binding, allows for the stay of federal court proceedings in any matter that is referable to

arbitration, and permits both federal and state courts to compel arbitration if one party has failed to comply with an agreement to arbitrate. 9 U.S.C. §§ 2–4.

Cumulatively, those provisions "manifest a liberal federal policy favoring arbitration agreements." *Gilmer*, 500 U.S. at 24 (quotations omitted). Thus, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

The Supreme Court has recently given new content to that strong federal pro-arbitration policy. In fact, the Court seems to have implied, with disapproval, that the states were promulgating facially neutral rules that were in fact intended to discriminate against agreements to arbitrate vis-a-vis other contracts:

> The FAA ... preempts any state rule discriminating on its face against arbitration—for example, a "law prohibit[ing] outright the arbitration of a particular type of claim." .... And not only that: The Act also displaces any rule that covertly accomplishes the same objective by disfavoring contracts that (oh so coincidentally) have the defining features of arbitration agreements.

*Kindred Nursing Centers Ltd. P'ship v. Clark*, — U.S. —, 137 S. Ct. 1421, 1426, 197 L.Ed.2d 806 (2017) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011)). Any consideration of State law, then, must bear in mind the *Kindred* preemption principle.

New Jersey courts, too, have held that arbitration "is a favored means of dispute resolution." *Hojnowski v. Vans Skate Park*, 187 N.J. 323, 342, 901 A.2d 381 (2006). The state courts have "long noted our public policy that encourages the 'use of arbitration proceedings as an alternative forum." *Wein v. Morris*, 194 N.J. 364, 375-76, 944 A.2d 642 (2008) (citing *Perini Corp. v. Greate Bay Hotel & Casino. Inc.*, 129 N.J. 479, 489, 610 A.2d 364 (1992)); *see also Delta Funding Corp. v. Harris*, 189 N.J. 28, 39, 912 A.2d 104 (2006). Accordingly, arbitration clauses are afforded a "presumption of arbitrability," which can only be overcome if the Court can determine with "positive assurances" that the clause does not cover the dispute at issue. *AT&T Techs. v. Commc'ns. Workers of Am.*,

8

475 U.S. 643, 650, 106 S. Ct. 1415, 89 L.Ed.2d 648 (1986); *see also Moses H. Cone Mem'l Hosp.*, 460 U.S. at 4, 103 S. Ct. 927 ("Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"). Ultimately, arbitration agreements should be read liberally to find arbitrability whenever possible. *Jansen v. Solomon Smith Barney, Inc.*, 776 A.2d 816 (N.J. Super. App. Div. 2001).

### b. Existence, validity, and scope of arbitration agreement

Arbitration is a creature of contract. Before referring any controversy to arbitration, the Court must determine whether the parties have indeed agreed to arbitrate it. *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003). That determination has three subparts:

   **(1)** whether the parties agreed to arbitrate;

   **(2)** whether the dispute is within the scope of the agreement; and

   **(3)** whether Congress nevertheless intended the dispute to be non-arbitrable.

*Sarbak v. Citigroup Global Markets, Inc.*, 354 F. Supp. 2d 531, 536–37 (D.N.J. 2004).

#### i. *Existence of agreement, Congressional policy*

I dispose of elements **(1)** and **(3)** briefly.

As for element **(1)**, Ms. Mulholland has supported her contentions with a certification.

A declarant with knowledge, she establishes that the arbitration agreement was electronically signed by Mr. Neith while he was employed by defendants. She attaches the relevant electronic business records to establish this. (*See* DE 9-2 at 1–2). In the Facts section of Mr. Neith's opposing brief, his attorney seemingly expresses skepticism, but does not forthrightly deny that Mr. Neith signed the agreement with ESquared. Counsel briefly complains that there is no affidavit sponsoring the electronic signature (but immediately transitions to the assumption *arguendo* that it was signed). Ms. Mulholland's certification, submitted in reply, remedies that deficiency.

9

Ms. Mulholland's declaration also states credibly that the "Restaurant" in the agreement refers to ESquared. The agreement, she demonstrates, is printed on that entity's letterhead. (*See* 9–2 at 1–2; DE 5-2). Again, plaintiff's counsel, in the Facts section of the brief, argues that the "Restaurant" is not adequately defined. Mr. Neith, however, offers no evidence or sworn statement in opposition to Mulholland's declaration. Nor does he explain who, if not ESquared, he was contracting with.

Attorney statements in a brief, particularly equivocal nondenial-denials like these, carry no evidentiary weight. Tellingly, the operative Argument section of Mr. Neith's brief does not assert an argument that these parties did not enter into this agreement. It assumes that existence of the agreement and is devoted exclusively to the argument that this dispute falls outside the legitimate scope of the arbitration provision.[3]

As for element **(3)**, I find no statement of legislative intent to preclude a waiver of judicial remedies for NJLAD, FMLA, and NJWCA claims. *See, e.g., Parker v. Hahnemann Univ. Hosp.*, No. CIV. 00-4173(JBS), 2001 WL 797247, at *5 (D.N.J. June 15, 2001) (accepting parties' determination that Congress had not prohibited arbitrating FMLA claims). At least prior to the March 18, 2019 amendments to the NJLAD, it was understood that NJLAD claims may be pursued through arbitration. *See, e.g., Martindale v. Sandvik, Inc.*, 173 N.J. 76, 93, 800 A.2d 872, 882 (2002) ("There is no indication in the text or legislative histories of either the FLA or the [NJ]LAD that restrict the use of an arbitral forum to pursue those claims. . . . The [NJ]LAD always permitted such claims

---

[3] Legal issues not discussed in the argument section of a brief ordinarily need not be considered. *Cf. Travitz v. Ne. Dep't ILGWU Health & Welfare Fund*, 13 F.3d 704, 711 (3d Cir. 1994) ("When an issue is not pursued in the argument section of the brief, the appellant has abandoned and waived that issue on appeal.")(citations omitted); *Kadetsky v. Egg Harbor Twp. Bd. of Educ.*, 82 F. Supp. 2d 327, 334 n.5 (D.N.J. 2000) (finding "casual reference" to a claim results in waiver). I do not go so far as to say these contentions are waived, but they certainly do not seem to be pressed.

10

to be pursued through an administrative hearing proceeding. N.J.S.A. 10:5-13.").[4]

### ii. Scope: Statutory claims

I turn to the main argument, concerning element **(2)**, the legitimate scope of the arbitration agreement. The parties disagree as to whether Mr. Neith's claims, which are statutory, are subject to arbitration as a matter of law. Mr. Neith maintains that statutory claims like the ones he asserts here are not covered by the arbitration agreement. (DE 6 at 10–17).

In support, he points to *Moon v. Breathless Inc*, 868 F.3d 209, 214 (3d Cir. 2017). In *Moon*, the question was whether an employment agreement that contained an arbitration provision was enforceable with respect to that plaintiff's claims under FLSA, the New Jersey Wage Payment Law ("NJWPL"), N.J. Stat. Ann. § 34:11-4.1, *et seq.*, and the New Jersey Wage and Hour Law ("NJWHL"), N.J. Stat. Ann. § 34:11-56a, *et seq. Moon*, 868 F.3d at 212.

In *Moon*, the Third Circuit surveyed the case law and outlined a three-part test to determine whether statutory claims were covered by an arbitration provision:

> To cover a statutory right under New Jersey law, an arbitration clause must do three things. **First, it must identify the general substantive area that the arbitration clause covers**: "To pass muster, however, a waiver-of-rights provision should at least provide that the employee agrees to arbitrate all statutory claims arising out of the employment relationship or its termination." *Garfinkel v. Morristown Obstetrics & Gynecology Assocs.*, 168 N.J. 124, 773 A.2d 665, 672 (2001); *see also Atalese v. U.S. Legal Servs. Grp.*, 219 N.J. 430, 99 A.3d 306, 315–16 (2014) ("But the clause, at least in some general and sufficiently broad way, must explain that the plaintiff is giving up her right to bring her claims in court or have a jury resolve the dispute."); *Martindale v. Sandvik, Inc.*, 173 N.J. 76, 800 A.2d

---

[4] The March 18, 2019 amendment to N.J. Stat. Ann. § 10:5-12.7 may restrict the use of arbitration provisions with respect to claims for discrimination. *See id.* ("A provision in any employment contract that waives any substantive or procedural right or remedy relating to a claim of discrimination, retaliation, or harassment shall be deemed against public policy and unenforceable"). However, whether this restricts arbitrations is left to another day as this provision applies prospectively and does not affect the contract at issue here, which was signed in 2017.

11

872, 883 (2002) ("In the circumstances of this case, the language in the arbitration agreement not only was clear and unambiguous, it was also sufficiently broad to encompass reasonably plaintiff's statutory causes of action.").

**Second, it must reference the types of claims waived by the provision**: "It should also reflect the employee's general understanding of the type of claims included in the waiver, *e.g.*, workplace discrimination claims." *Garfinkel*, 773 A.2d at 672. It need not, however, mention the specific statutory rights at issue: "We do not suggest that the arbitration clause has to identify the specific constitutional or statutory right guaranteeing a citizen access to the courts that is waived by agreeing to arbitration." *Atalese*, 99 A.3d at 315.

**Third, it must explain the difference between arbitration and litigation**: "The waiver-of-rights language, however, must be clear and unambiguous—that is, the parties must know that there is a distinction between resolving a dispute in arbitration and in a judicial forum." *Id.* at 315; *see also Martindale*, 800 A.2d at 884 (enforcing an arbitration clause because it, *inter alia*, "addressed specifically a waiver of the right to a jury trial, augmenting the notice to all parties to the agreement that claims involving jury trials would be resolved instead through arbitration").

*Moon*, 868 F.3d at 214 (emphasis added).

Two of the cited state cases, *Garfinkel* and *Atalese*, held that the arbitration clause did not cover plaintiff's statutory claims:

In *Garfinkel*, language in the arbitration provision confined its scope to disputes concerning interpretation of the contract terms. Arbitration was limited to "any controversy or claim arising out of, or relating to, this Agreement or the breach thereof." *Garfinkel*, 773 A.2d at 672. That plaintiff's statutory claims therefore fell outside the scope of the arbitration provision.

In *Atalese*, the New Jersey Supreme Court interpreted the arbitration provision of a debt-adjustment service contract. The arbitration clause, it found, did not sufficiently notify the plaintiff that she was surrendering her right to pursue her statutory claims in court. The *Atalese* provision read as follows:

> In the event of any claim or dispute between Client and the USLSG related to this Agreement or related to any performance of any services related to this Agreement, the claim or dispute shall be submitted to binding arbitration upon the request of either party upon the service of that request on the other party.

*Atalese*, 99 A.3d at 310.

In a third case discussed by the Third Circuit, *Martindale*, the New Jersey Supreme Court came to the opposite conclusion. That employment agreement contained the following broad arbitration provision:

> As a condition of my employment, I agree to waive my right to a jury trial in any action or proceeding related to my employment with [the Employer]. I understand that I am waiving my right to a jury trial voluntarily and knowingly, and free from duress or coercion.

*Martindale*, 800 A.2d at 875. That language, the New Jersey Supreme Court held, contained no limit as to the kind of employment-related disputes that were covered. Moreover, it was appropriately clear regarding the waiver of the right to litigate in court. *Id.* at 884. Therefore, the *Martindale* court determined that plaintiff's statutory claims were covered by the arbitration agreement.

In *Moon*, which applied this case law, the arbitration provision read as follows:

> In a dispute between Dancer and Club under this Agreement, either may request to resolve the dispute by binding arbitration. THIS MEANS THAT NEITHER PARTY SHALL HAVE THE RIGHT TO LITIGATE SUCH CLAIM IN COURT OR TO HAVE A JURY TRIAL—DISCOVERY AND APPEAL RIGHTS ARE LIMITED IN ARBITRATION. <u>ARBITRATION MUST BE ON AN INDIVIDUAL BASIS</u>. THIS MEANS NEITHER YOU NOR WE MAY JOIN OR CONSOLIDATE CLAIMS IN ARBITRATION, OR LITIGATE IN COURT OR ARBITRATE ANY CLAIMS AS A REPRESENTATIVE OR MEMBER OF A CLASS.

*Moon* ultimately held that this arbitration provision fell on the *Garfinkel/Atalese*, not the *Martindale*, side of the line, and therefore did not cover plaintiff's statutory claims. The "dispute between Dancer and Club under

this Agreement," *Moon* held, referred only to contract disputes, not statutory claims. 868 F.3d at 216.

### iii. Application of *Moon* test to this case

I find that this case is most analogous to *Martindale* and therefore hold that Mr. Neith's claims fall within the scope of the arbitration agreement.

The first prong of the *Moon* test—that the agreement must identify the general substantive area that the arbitration provision covers—is satisfied. The arbitration agreement covers "employment related disputes" and includes very broad language requiring arbitration of "all disputes that could be brought in a court." Indeed, the clause explicitly states that it applies to "all federal, state and local laws" claims:

> [A]ll disputes, claims or controversies ("claims") against the Restaurant that could be brought in a court will be resolved through arbitration. This Agreement applies to all federal, state and local laws, regulations, common law claims and claims for costs, attorneys' fees and expenses, and is governed by the Federal Arbitration Act to the maximum extent permitted by law.

(DE 5-2 at 4). This provision does not contain any limiting language that would exclude statutory claims.

It is true that the agreement does outline a subset of "Excluded Claims." (*See id.*) For example, claims for unpaid workers' or unemployment compensation benefits are excluded. That only tends to confirm that, where the drafters of the agreement intended to exclude a particular kind of claim, they knew how to do so. Mr. Neith's claims here do not fall within the exclusion of claims for unpaid workers' compensation.[5]

The second prong of the *Moon* test—that the arbitration provision must reference the types of claims waived—has also been met. Mr. Neith points out that the NJLAD, FMLA, and NJWCA statutes are not specifically mentioned in the agreement. (DE 6 at 13). But, as *Garfinkel* noted, "we do not suggest that a party need refer specifically to the LAD or list every imaginable statute by name

---

5     He does claim he was fired in retaliation for exercise of his rights under the workers' compensation laws, but I find such a claim to be distinct.

to effectuate a knowing and voluntary waiver of rights. To pass muster, however, a waiver-of-rights provision should at least provide that the employee agrees to arbitrate all statutory claims arising out of the employment relationship or its termination." 773 A.2d at 672. Defendants' arbitration agreement passes this test. It provided Mr. Neith with notice that "all federal, state and local laws, regulations, common law claims" arising from his employment are covered. This is perfectly clear; no more is required.

The third prong of the *Moon* test—that the agreement sufficiently explain the difference between arbitration and litigation—is likewise satisfied. The agreement is substantially dedicated to discussing the terms under which Mr. Neith agreed to arbitrate disputes. (*See* agreement, quoted at pp. 3–6, *supra*.) The agreement starts in its first paragraph by indicating that should an employee be unable to resolve a dispute informally, then the employee agrees to the "arbitration process described below." (DE 5–2 at 4). That arbitration process, as outlined in the agreement, tells each employee that an arbitration must be brought by an employee on an individual basis rather than as a class action. (*Id.*). The employee is then told that an arbitrator, rather than a judge, will have exclusive authority to resolve all disputes. (*Id.* § 2). However, the agreement states that should it be determined that the bar on class actions is unlawful, "then that action may proceed in a court." (*Id.*). The Agreement then highlights the rules governing the arbitration: how many arbitrators will hear the case, how an arbitrator is to render decisions, what should happen if summary judgment motions are submitted, where the arbitration will take place, and who will pay for the arbitration. (*Id.* § 4). Finally, the agreement concludes by stating that "I KNOWINGLY AND FREELY AGREE TO THIS MUTUAL AGREEMENT TO ARBITRATE CLIAMS WHICH OTHERWISE COULD HAVE BEEN BROUGHT IN COURT." (*Id.* at 6). The agreement thus spells out how the arbitration proceeding is to take place and explains that this process is different from a court proceeding. Again, this could hardly be clearer. It cannot

be said that Mr. Neith was not informed that an arbitration proceeding would be different from, and would take place in lieu of, a court proceeding.

Accordingly, I find that Mr. Neith's claims are covered by the parties' arbitration agreement. That agreement will be enforced, and all of the claims in the complaint will be referred to arbitration.

### c. Stay vs. Dismissal

A procedural question remains. The Arbitration Act, 9 U.S.C. § 3, provides that the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." The Court of Appeals has held that a stay, rather than dismissal, is mandatory when one of the parties has made application for it. See *Lloyd v. HOVENSA, LLC.*, 369 F.3d 263, 269 (3d Cir. 2004).

No such application has been made here, however. The plaintiff has moved for dismissal. The defendant has not moved for a stay, but has argued in the alternative that, if only some claims are arbitrable, then only they should be dismissed. (*See* Def. Brf. 13, DE 6 at 17.) By negative implication, defendant is endorsing the notion that dismissal is the remedy in connection with referral of claims to arbitration. At least where all claims have been found arbitrable and no party has moved for a stay, it would appear that the court retains the discretion to dismiss rather than stay the case. *Cf. LaFurno v. Virbac Corp.*, No. CIV.A. 11-4774 SRC, 2012 WL 646029, at *2 (D.N.J. Feb. 24, 2012).

I will exercise my discretion to grant Defendants' motion to dismiss the complaint in connection with referring the claims to arbitration.

### d. Legal fees

Defendants assert, without citation to legal authority, that they should be awarded their attorney's fees in connection with this motion. I disagree.

When Mr. Neith signed the arbitration agreement, he was guaranteed the right to challenge the enforceability of the arbitration provision: "Nothing

16

precludes you from challenging the enforceability of this Agreement; however, the Restaurant will assert that you have agreed to pursue all claims individually in arbitration." (DE 5–2 at 5). That is precisely what has taken place; I cannot find that any wrongful litigation conduct has occurred.

In any event, "[o]ur basic point of reference when considering the award of attorney's fees is the bedrock principle known as the American Rule: Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252–253 (2010); *see also In re Niles*, 176 N.J. 282, 293–94 (N.J. 2003) ("New Jersey has a strong public policy against the shifting of costs" and that "[t]his Court has embraced that policy by adopting the 'American Rule,' which prohibits recovery of counsel fees by the prevailing party against the losing party.").

Accordingly, defendants' motion for attorney's fees is **DENIED**. Each party will bear its own costs.

### III. Conclusion

For the reasons set forth above, the arbitration agreement is enforced, the matter is referred to arbitration. The motion to dismiss (DE 5) is **GRANTED**. Defendants' motion for attorney's fees is **DENIED**.

An appropriate order follows.

Dated: January 15, 2020

**Kevin McNulty**
**United States District Judge**